**BICKERTON LEE DANG SULLIVAN MEHEULA**
A LIMITED LIABILITY LAW PARTNERSHIP

JAMES J. BICKERTON  3085
Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 801
Honolulu, Hawai'i 96813
Telephone: (808) 599-3811
Email:  bickerton@bsds.com

Attorneys for Plaintiff
NALU KAI INCORPORATED

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NALU KAI INCORPORATED, dba NAISH SAILS HAWAI'I,<br><br>        Plaintiff,<br><br>    *v.*<br><br>HAWAI'I AIRBOARDS, LLC,<br><br>        Defendant. | Civil No. 1:14-cv-112<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY, NON-INFRINGEMENT, AND UNENFORCEABILITY, AND FOR PATENT MISUSE; DEMAND FOR JURY TRIAL; EXHIBITS "A" – "I" AND SUMMONS** |

**COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT INVALIDITY, NON-INFRINGEMENT, AND
UNENFORCEABILITY, AND FOR PATENT MISUSE**

Plaintiff NALU KAI INCORPORATED, which does business as "NAISH

SAILS HAWAI'I," for its Complaint against Defendant HAWAI'I AIRBOARDS,

LLC (hereinafter "HA"), alleges as follows:

## PARTIES

1. Plaintiff NALU KAI INCORPORATED is a corporation organized under the laws of the State of Delaware and does business as "Naish Sails Hawai'i," which has its principal place of business in Haiku, Maui, Hawai'i.

2. Upon information and belief, Defendant HA is a limited liability company organized under the laws of the State of Hawai'i, with its principal place of business in Kailua, Hawai'i.

## JURISDICTION AND VENUE

3. This is a complaint for a declaration that United States Patent No. 6,066,016 and its *Ex Parte* Reexamination Certificate (9941st), issued November 15, 2013 ("the '016 Patent"), attached as **Exhibit A**, is invalid, not infringed, and unenforceable. This Court has subject matter jurisdiction pursuant 28 U.S.C. §§ 1331, 1338 and 2201.

4. On October 21, 2011, HA sued Nalu Kai Incorporated, in this Court, Case No. 1:11-cv-00639-KSC, for infringement of the '016 Patent ("*HA v. Nalu Kai Incorporated*").

5. After the *HA v. Nalu Kai Incorporated* lawsuit was filed, HA and Nalu Kai Incorporated settled the lawsuit and Nalu Kai Incorporated received a license to the '016 Patent for its full term or until it was decreed invalid (the

"Settlement").  Pursuant to the Settlement, on January 9, 2012, HA dismissed the *HA v. Nalu Kai Incorporated* lawsuit.

6. On September 14, 2012, a third party filed in the United States Patent and Trademark Office ("PTO") an *Ex Parte* Request for Reexamination (Serial No. 90/012,646) of the '016 Patent, and, on December 5, 2012, the PTO granted the request and ordered reexamination (the "Reexamination").

7. In the Reexamination, the PTO Examiner rejected the challenged claims of the '016 Patent, HA thereafter amended the claims, the Examiner eventually allowed some of the amended claims, and, on November 15, 2013, the PTO issued an *Ex Parte* Reexamination Certificate (9941st) with the new, amended claims ("New Claims").  A copy of the November 15, 2013 *Ex Parte* Reexamination Certificate (9941st) is attached at the end of the '016 Patent, **Exhibit A** hereto.

8. On about December 2, 2013, HA's attorney sent Naish Sails Hawaiʻi a letter demanding royalties it claimed were owing under the Settlement, asserting that Naish Sails Hawaiʻi infringed the New Claims, and demanding a new license.  A copy of this December 2, 2013 letter is attached hereto as **Exhibit B**.

9. On or about February 19, 2014, HA's attorney sent Naish Sails Hawaiʻi another letter claiming that certain products of Naish Sails Hawaiʻi infringed reexamined claims 1, 14 and 21 of the '016 Patent, demanding royalties,

asserting that "[t]o date, a total of 14 companies have accepted a license," and threatening litigation if Naish Sails Hawaiʻi did not agree to HA's demands. A copy of this February 19, 2014 letter is attached hereto as **Exhibit C**.

10. On March 4, 2014, Naish Sails Hawaiʻi responded to HA's demands in a letter setting forth the bases for Naish Sails Hawaiʻi's beliefs that the New Claims of the '016 Patent are invalid, unenforceable and not infringed. A copy of this March 4, 2014 letter is attached hereto as **Exhibit D**.

11. An actual and justiciable controversy exists between the parties regarding the validity, enforceability, and alleged infringement of the '016 Patent asserted by HA against Naish Sails Hawaiʻi, entitling Naish Sails Hawaiʻi to declaratory relief pursuant to 28 U. S. C. § 2201.

12. This Court has jurisdiction over HA and venue is proper in this Court insofar as HA is a limited liability company organized under the laws of the State of Hawaiʻi and has its principal place of business in Hawaiʻi, within this judicial district.

## BACKGROUND

13. On November 12, 1997, a provisional application for patent (Serial No. 60/065,162) was filed in the PTO by Robert Yonover, entitled "One-Person Survival Craft" ("Provisional Application"). A copy of the Provisional Application is attached as **Exhibit E**. The Provisional Application consisted of a

one-page flyer entitled "LIFE/FLOAT™ The One-Person Survival Craft by SEE/RESCUE®", five drawings, and some text. The flyer showed a board with a person in a full-body "Thermal Protective Covering" lying on the board in a prone, face-down position. The flyer showed a board with a tapering nose and described it as "an inflatable platform float" constructed from a "Chambered body inflated with one-way valves."

14. A non-provisional application for Letters Patent (Serial No. 09/187,732) was filed in the PTO on November 9, 1998, entitled "Inflatable Transportable Water Craft for Survival or Recreational Purposes", identifying Robert N. Yonover as the inventor, and disclosing and claiming "devices to help provide floatation, protection, mobility, and signaling capability to persons stranded at sea" ("the Non-Provisional Application"). *See* **Exhibit A**, the '016 Patent, at column 1, lines 11 through 12.

15. On May 23, 2000, the PTO issued the '016 Patent, which included eleven drawings, almost five columns of written description, and twenty-seven claims.

16. In about 2011, HA sent letters to numerous companies asserting that inflatable Stand Up Paddle boards, commonly known as "SUP" boards, infringed the '016 Patent and demanded a license. HA subsequently sued seven companies

for infringement of the '016 Patent. Six of the cases were settled and one case was dismissed for lack of personal jurisdiction.

17. Leading up to about 2010, SUP boards became increasingly popular as recreational boards for ocean and fresh-water paddling, surfing, riding river rapids, and exploring.

18. As SUP boards increased in popularity, inflatable SUP boards, constructed from "drop-stitch" material, were introduced in the United States market and became increasingly successful.

19. Drop-stitch was developed at least as early as the 1940s as a construction for inflatable self-supporting structures. Drop-stitch, which is sometimes also referred to as "drop-thread," connects top and bottom layers of airtight material with thousands of threads. Side walls are glued to these top and bottom layers to create an air-tight unit. When inflated, the threads hold the top and bottom layers at a fixed distance from each other, resulting in a rigid structure.

20. Drop-stitch was designated under Military Specification MIL-60 C-17415E and was sold under the trade name "Infab.

21. The relationship between the trade name "Infab" and drop-stitch construction was expressly defined in United States Patent No. 3,775,782 to Charles A. Rice *et al.* (the "Rice Patent"), entitled "Inflatable Aquatic Rescue

Board and Method of Rescue,, at column 4, lines 57 through 60. A copy of the Rice Patent is attached as **Exhibit F**.

22. One application of drop-stitch construction was a "Rescue Sled" made and sold in the United States, starting in about the late 1980s, by a New Jersey company called Switlik Parachute Co., Inc. The Switlik Rescue Sled used an inflatable board constructed from drop-stitch material.

23. The Switlik Rescue Sled was described in United States Patent No. 4,736,474 (the "Switlik Patent"), issued on April 12, 1988, entitled "Rescue Transportation Device." A copy of the Switlik Patent is attached as **Exhibit G**.

24. The Switlik Patent expressly described the Rescue Sled as intended for "water borne" rescues and that "the device of the present invention can be paddled to facilitate water rescue efforts." *See* Switlik Patent (**Exhibit G**), at column 1, lines 30 through 32.

25. In at least January 1993, the Switlik Rescue Sled was advertised in "Rescue" magazine (the "Switlik Ad"). A copy of the Switlik Ad is attached as **Exhibit H**. The Switlik Ad stated that the Rescue Sled used "Patented inflatable Infab and ballistic nylon construction."

26. In January 2013, in connection with one of the lawsuits brought by HA alleging infringement of the '016 Patent, HA was advised in a letter that the

"Infab" construction disclosed in the Switlik Ad referred to drop-stitch ("January 2013 Letter").  A copy of this letter is attached as **Exhibit I**.

27. In the Reexamination of the '016 Patent, the PTO Examiner relied on the Switlik Ad, along with other prior art, in rejecting claims of the '016 Patent. but the Examiner was not aware that the Switlik Ad disclosed an inflatable board constructed of drop-stitch material.

28. Although it knew that the Switlik Ad disclosed drop-stitch construction by its reference to "Infab," HA deceived the PTO Examiner in the Reexamination that the prior art being considered by the examiner, including the Switlik Ad, did not disclose drop-stitch construction and that the inventor named in the '016 Patent, Dr. Yonover, was the first to adapt drop-stitch to an "Inflatable Transportable Water Craft for Survival or Recreational Purposes" (the title of the '016 Patent).

29. On July 12, 2013, and again on September 10, 2013, in remarks made to the PTO during the Reexamination, HA made the following statement to the examiner as part of its contention that the amended claims were not obvious over the prior art, including the Switlik Ad (italics in original):

> … However, Patent Owner *does* claim a water craft having a unique combination of elements resulting in a stable, rigid inflated structure having flat, substantially parallel top and bottom walls and a defined shape that may be used for surfing and paddling.  Despite the fact that "pool-grade" pneumatic floats and drop stitching have both been in existence for more than a half-century, water craft of type disclosed

8

and claimed by Patent Owner did not exist at the time that Patent Owner's invention was made.

Indeed, drop-stitch material was used in life rafts in the 1940s, but such material was used only for the floor boards. Once exposed to the existence of such drop-stitch material and its capabilities, it occurred to Patent Owner that the potential strength of the material could be configured into stable, rigid inflatable paddleboards or surfboards by constructing a flat, "tabular" housing with a forward curve and generally pointed end to ensure that it moves through the waves without penetrating or sinking into the waves or water surface. …

The inflated, drop-stitch construction is extremely rigid and allows a person to lay or stand without the inflated housing collapsing or folding. Until Patent Owner recognized this unique combination of elements, all other inflatable craft suffered from a lack of rigidity when a person's weight was applied to it, causing it to fold up around the body of the user in both prone and especially standing positions. The closest approximations to Patent Owner's invention at the time it was made were inflatable, short rafts common in the 1960s and 70s. ...

30. At the time it made these statements, HA knew that the Switlik Ad disclosed drop-stitch construction by its reference to "Infab," since the January 2013 Letter to HA identified the passage from the Rice Patent in which the connection between drop-stitch and Infab was expressly defined.

31. HA specifically intended to deceive the Examiner about the disclosure of drop-stitch construction in the Switlik Ad so as to persuade the Examiner to allow the amended claims.

32. The Examiner relied on Hawai'i Airboards' misrepresentation of the prior art and allowed the amended claims, concluding that the Switlik Ad did not

9

disclose drop-stitch construction.  In the October 9, 2013 Notice of Intent to Issue *Ex Parte* Reexamination Certificate, the Examiner stated:

> The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:  the prior art of record, including Smithers, Moran and Rescue Sled [the Switlik Ad], fails to show or suggest a plurality of connectors being configured to maintain the top and bottom walls substantially flat with and uninterrupted planar surface for a water craft as now recited in the amended independent claims 1, 14 and 21.  While Moran and Rescue Sled show such flat surfaces, they fail to have the plurality of connectors.

33. The Examiner's erroneous conclusion that the prior art, including the Switlik Ad, did not disclose drop-stitch construction ("plurality of connectors"), was the only ground on which the examiner found the amended claims allowable.

34. But for the Examiner's misunderstanding of the Switlik Ad, the amended claims would not have been allowed.

## FIRST CLAIM FOR RELIEF
### Invalidity of the '016 Patent

35. Naish Sails Hawaiʻi re-alleges and fully incorporates the preceding paragraphs in their entirety as though fully set forth herein.

36. The '016 Patent is invalid, in whole or in part, for failure to comply with one or more of the requirements of 35 U.S.C., including, without limitation, §§ 101, 102, 103, and 112, and HA's claims are thus barred in whole or in part.

37. Naish Sails Hawaiʻi is entitled to declaratory judgment that each and every claim of the '016 Patent is invalid.

38. At least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as anticipated, under 35 USC § 102, by the prior art.

39. Naish Sails Hawai'i is entitled to declaratory judgment that at least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as anticipated, under 35 USC § 102, by the prior art.

40. At least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as obvious, under 35 USC § 103, over the prior art.

41. Naish Sails Hawai'i is entitled to declaratory judgment that at least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as obvious, under 35 USC § 103, over the prior art.

42. At least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as failing to satisfy the enablement, written description, and/or the best mode requirements of 35 USC § 112.

43. Naish Sails Hawai'i is entitled to declaratory judgment that at least claims 1, 2, 4 through 6, 11, 13, 14, 16 through 18, and 21 through 26 of the '016 Patent are invalid as failing to satisfy the enablement, written description, and/or the best mode requirements of 35 USC § 112.

## SECOND CLAIM FOR RELIEF
### Unenforceability of the '016 Patent

44.     Naish Sails Hawai'i re-alleges and fully incorporates the preceding paragraphs in their entirety as though fully set forth herein.

45.     During the Reexamination, HA specifically intended to deceive the PTO in order to obtain allowance of claims.

46.     The PTO examiner was deceived by HA's misrepresentations.

47.     But for the misrepresentations, the PTO examiner would not have allowed the claims to issue.

48.     Naish Sails Hawai'i is entitled to declaratory judgment that the '016 Patent is unenforceable by reason of fraud committed on the PTO by HA.

## THIRD CLAIM FOR RELIEF
### Non-Infringement of the '016 Patent

49.     Naish Sails Hawai'i re-alleges and fully incorporates the preceding paragraphs in their entirety as though fully set forth herein.

50.     Naish Sails Hawai'i does not and has not infringed any valid and enforceable claim of the '016 Patent.

51.     As a result, Naish Sails Hawai'i is entitled to judgment from this Court finding that the '016 Patent is not infringed by Naish Sails Hawai'i.

## FOURTH CLAIM FOR RELIEF
### Patent Misuse

52. Naish Sails Hawai'i re-alleges and fully incorporates the preceding paragraphs in their entirety as though fully set forth herein.

53. At the time HA demanded a license from Naish Sails Hawai'i for the New Claims of the '016 Patent, HA knew that it had obtained the New Claims as a result of its intentional deception of the PTO examiner, during reexamination, with respect to the disclosure of drop-stitch construction by the Switlik Ad's reference to "Infab."

54. HA knew that, but for its deception of the PTO Examiner, the New Claims would not have issued.

55. HA's demand that Naish Sails Hawai'i license the New Claims was a misuse of the '016 Patent.

56. As a result of HA's misuse of the '016 Patent, Naish Sails Hawai'i incurred damage, including attorneys fees and associated costs, in connection with HA's misuse of the '016 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Naish Sails Hawai'i respectfully requests that Court enter judgment as follows:

A. Declaring that the claims of the '016 Patent are invalid;

B.   Declaring that the '016 Patent is unenforceable by reason of fraud perpetrated on the PTO by HA;

C.   Declaring that Naish Sails Hawai'i does not infringe any valid or enforceable claim of the '016 Patent;

D.   Declaring that HA is estopped from enforcing the '016 Patent against Naish Sails Hawai'i;

E.   Declaring that HA misused the '016 Patent in its demand that Naish Sails Hawai'i pay royalties;

F.   Declaring that this is an exceptional case and awarding Naish Sails Hawai'i reasonable attorney fees and expenses;

G.   Awarding Naish Sails Hawai'i damages for HA's misuse of the '016 Patent;

H.   Awarding punitive damages against HA for its misuse of the '016 Patent; and

I.   Awarding Naish Sails Hawai'i such other relief as the Court may deem just and appropriate.

DATED:  Honolulu, Hawai'i, March 5, 2014.

                                        /s/ *James J. Bickerton*
                                        JAMES J. BICKERTON
                                        Attorney for Plaintiffs