IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NALU KAI INCORPORATION d/b/a | ) | CIVIL 14-00112 LEK-RLP |
| NAISH SAILS HAWAII, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAII AIRBOARDS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING HAWAII AIRBOARDS, LLC'S MOTION FOR
SUMMARY JUDGMENT THAT U.S. PATENT NO. 6,066,016 IS
VALID; AND DENYING NALU KAI INCORPORATED'S MOTION
FOR PARTIAL SUMMARY JUDGMENT OF PATENT INVALIDITY**

Before the Court are Defendant/Counter-Claimant Hawaii
Airboards, LLC's ("HAB") Motion for Summary Judgment that U.S.
Patent No. 6,066,016 Is Valid ("HAB Motion"), and
Plaintiff/Counterclaim Defendant Nalu Kai Incorporated's ("Nalu
Kai") Motion for Partial Summary Judgment of Patent Invalidity
("Nalu Kai Motion"), both filed on July 26, 2014 (collectively,
"Motions"). [Dkt. nos. 36, 37.] The parties filed their
memoranda in opposition on September 10, 2014, and their replies
on October 13, 2014. [Dkt. nos. 46, 48, 50, 51.] These matters
came on for hearing on October 27, 2014. After careful
consideration of the Motions, supporting and opposing memoranda,
and the arguments of counsel, HAB's Motion is HEREBY GRANTED and
Nalu Kai's Motion is HEREBY DENIED for the reasons set forth
below.

## BACKGROUND

The relevant factual and procedural background of this case is set forth in this Court's August 29, 2014 Order Granting in Part and Denying in Part Counter-Claimant Hawaii Airboards, LLC's Motion to Strike Certain of Counter-Defendant's Affirmative Defenses Pursuant to Fed. R. Civ. P. 12(f) ("8/29/14 Order"), [dkt. no. 45,[1]] and this Court will only repeat the background that is relevant to the instant Motions.

This dispute centers on U.S. Patent No. 6,066,016 ("the '016 Patent"), which Robert Yonover applied for on November 9, 1998, and the United States Patent and Trademark Office ("the PTO") issued on May 23, 2000, for an "inflatable transportable water craft for survival or recreational applications." [Nalu Kai's Local Rule 56.1 Concise Statement of Undisputed Facts in Support of F.R.Civ.P. 56(a) Motion for Partial Summary Judgment of Patent Invalidity ("Nalu Kai CSOF"), filed 7/26/14 (dkt. no. 37-2), Decl. of Duncan Palmatier ("Palmatier Decl."), Exh. DP1 ('016 Patent).] Nalu Kai, which manufactures and sells Stand Up ("SUP") Paddleboards, began licensing the '016 Patent from HAB in 2011, but stopped paying royalties when a third-party challenged the patent's validity on September 14, 2012. After a protracted review process, on November 15, 2013, the PTO issued its Ex Parte Reexamination Certificate (9941st) ("the Reexamination

---

[1] The 8/29/14 Order is also available at 2014 WL 4322247.

2

Certificate"), which incorporated some old claims from the '016 Patent and some newly amended claims. [Palmatier Decl., DP2 (Reexamination Certificate).]

Nalu Kai, however, has continued to refuse to either pay royalties on the original license agreement or negotiate a new license. Instead, on March 5, 2014, it filed the instant lawsuit, alleging, alternatively, that the '016 Patent is invalid ("Count I"), it is unenforceable due to fraud on the PTO and patent misuse ("Counts II and IV"), and that Nalu Kai's SUP paddleboards do not infringe on any valid and enforceable claim from the '016 Patent ("Count III"). Nalu Kai seeks the following relief: declaratory judgments that the '016 Patent is invalid and unenforceable, that Nalu Kai's products do not infringe on any valid or enforceable claims from the '016 Patent, and that HAB misused, and is estopped from enforcing, the '016 Patent; damages for HAB's patent misuse; punitive damages; attorneys' fees and costs; and all other appropriate relief.[2] [Complaint, filed

_____

[2] On March 31, 2014, HAB filed its Answer and Counterclaim ("Counterclaim"), alleging Nalu Kai breached its license agreement with HAB ("Counterclaim Count I") and Nalu Kai's products infringe on the '016 Patent ("Counterclaim Count II") and, on April 23, 2014, Nalu Kai filed its Reply and Affirmative Defenses to the Counterclaim ("Affirmative Defenses"). [Dkt. nos. 10, 22.] On May 13, 2014, HAB filed its Motion to Strike Certain of Counter-Defendant's Affirmative Defenses Pursuant to Fed.R.Civ.P. 12(f) ("Motion to Strike") and, on August 29, 2014, the Court issued the 8/29/14 Order, dismissing Nalu Kai's statute of limitations defenses and failure to mitigate defense, and denying the Motion to Strike as to the jurisdictional, equitable,
(continued...)

3/5/14 (dkt. no. 1), at pgs. 13-14.]

While the parties' memoranda discuss HAB's purported fraud on the PTO, they have agreed that the only issue raised by the Motions is the validity of the '016 Patent. [Joint Rule 26(f) Report ("Rule 26(f) Report"), filed 6/2/14 (dkt. no. 25), at 5.] Thus, this Order addresses only on validity as well. Further, Nalu Kai limits its motion to invalidity based on obviousness, although the Complaint includes other bases for invalidity, including anticipation. The HAB Motion focuses on both obviousness and anticipation. The Court FINDS that the '016 Patent was not obvious in light of the prior art at the time Yonover applied for the patent, nor anticipated, for the reasons set forth below.

## STANDARD

"To receive patent protection a claimed invention must, among other things, fall within one of the express categories of patentable subject matter, § 101, and be novel, § 102, and nonobvious, § 103." Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2242 (2011).

---

[2](...continued)
and contract defenses. [Dkt. nos. 23, 45.]

Regarding anticipation, prior to 2012,[3] 35 U.S.C.

§ 102(a)(b) (2011), provided, in pertinent part:

A person shall be entitled to a patent unless --

(a) the invention was known or used by others
in this country, or patented or described in
a printed publication in this or a foreign
country, before the invention thereof by the
applicant for patent, or

(b) the invention was patented or described
in a printed publication in this or a foreign
country or in public use or on sale in this
country, more than one year prior to the date
of the application for patent in the United
States . . . .

The Federal Circuit has described the standard for

anticipation as follows:

"Anticipation requires the presence in a single
prior art disclosure of all elements of a claimed
invention arranged as in the claim." Connell v.
Sears, Roebuck & Co., 722 F.2d 1542, 1548 (Fed.
Cir. 1983). The requirement that the prior art
elements themselves be "arranged as in the claim"
means that claims cannot be "treated . . . as mere
catalogs of separate parts, in disregard of the
part-to-part relationships set forth in the claims
and that give the claims their meaning."
Lindemann Maschinenfabrik GMBH v. Am. Hoist &
Derrick Co., 730 F.2d 1452, 1459 (Fed. Cir. 1984).
"[U]nless a reference discloses within the four
corners of the document not only all of the
limitations claimed but also all of the
limitations **arranged or combined in the same way**

---

[3] "The America Invents Act ("AIA"), Pub. L. No. 112-29,
took effect on September 16, 2012. Because the applications for
the patent[] at issue in this case [was] filed before that date,
[the Court] refer[s] to the pre-AIA versions of §§ 102 and 103."
See Allergan, Inc. v. Apotex Inc., 754 F.3d 952, 958 n.1 (Fed.
Cir. 2014).

**as recited in the claim**, it cannot be said to
prove prior invention of the thing claimed and,
thus, cannot anticipate under 35 U.S.C. § 102."
Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d
1359, 1371 (Fed. Cir. 2008) (emphasis added).

. . . . For a claim to be anticipated, each
claim element must be disclosed, either expressly
or inherently, in a single prior art reference,
and the claimed arrangement or combination of
those elements must also be disclosed, either
expressly or inherently, in that same prior art
reference.

Therasense, Inc. v. Becton, Dickinson & Co., 593 F.3d 1325, 1332-

33 (Fed. Cir. 2010) (some alterations in Theransense).

Regarding obviousness (and also prior to 2012), 35

§ U.S.C. 103(a) (2011) provided:

A patent may not be obtained though the invention
is not identically disclosed or described as set
forth in section 102 of this title, if the
differences between the subject matter sought to
be patented and the prior art are such that the
subject matter as a whole would have been obvious
at the time the invention was made to a person
having ordinary skill in the art to which said
subject matter pertains. Patentability shall not
be negatived by the manner in which the invention
was made.

The Federal Circuit has described the standard for

obviousness as follows:

A party seeking to invalidate a patent based on
obviousness must demonstrate "by clear and
convincing evidence that a skilled artisan would
have been motivated to combine the teachings of
the prior art references to achieve the claimed
invention, and that the skilled artisan would have
had a reasonable expectation of success in doing
so." Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348,
1361 (Fed. Cir. 2007). Clear and convincing
evidence places in the fact finder "an abiding

6

conviction that the truth of [the] factual
contentions are highly probable." <u>Colorado v. New
Mexico</u>, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L.
Ed. 2d 247 (1984) (quotation marks omitted).

The obviousness determination turns on
underlying factual inquiries involving: (1) the
scope and content of prior art, (2) differences
between claims and prior art, (3) the level of
ordinary skill in pertinent art, and (4) secondary
considerations such as commercial success and
satisfaction of a long-felt need. <u>Graham v. John
Deere Co.</u>, 383 U.S. 1, 17, 86 S. Ct. 684, 15 L.
Ed. 2d 545 (1966). The Supreme Court has
explained that the Federal Circuit's "teaching,
suggestion or motivation" test provides helpful
insight into the obviousness question as long as
it is not applied rigidly. <u>KSR Int'l Co. v.
Teleflex Inc.</u>, 550 U.S. 398, 127 S. Ct. 1727,
1741, 167 L. Ed. 2d 705 (2007). Accordingly,
under <u>KSR</u>, "it remains necessary to identify some
reason that would have led a chemist to modify a
known compound in a particular manner to establish
prima facie obviousness of a new claimed
compound." <u>Takeda Chem. Indus., Ltd. v.
Alphapharm Pty., Ltd.</u>, 492 F.3d 1350, 1357 (Fed.
Cir. 2007).

If a patent challenger makes a prima facie
showing of obviousness, the owner may rebut based
on "unexpected results" by demonstrating "that the
claimed invention exhibits some superior property
or advantage that a person of ordinary skill in
the relevant art would have found surprising or
unexpected." <u>In re Soni</u>, 54 F.3d 746, 750 (Fed.
Cir. 1995).

<u>Procter & Gamble Co. v. Teva Pharm. USA, Inc.</u>, 566 F.3d 989, 994

(Fed. Cir. 2009) (alteration in <u>Procter & Gamble</u>).

To weigh the first and second <u>Graham</u> factors, the Court

must construe the claims in the challenged patent and in the

prior art. In <u>Phillips v. AWH Corp.</u>, the Federal Circuit

described claim construction at length. It explained that, in

7

general:

It is a "bedrock principle" of patent law
that "the claims of a patent define the invention
to which the patentee is entitled the right to
exclude." Innova[/Pure Water, Inc. v. Safari
Water Filtration Sys., Inc.], 381 F.3d [1111,]
1115 [(Fed. Cir. 2004)]; see also Vitronics [Corp.
v. Conceptronic, Inc.], 90 F.3d [1576,] 1582
[(Fed. Cir. 1996)] ("we look to the words of the
claims themselves . . . to define the scope of the
patented invention"); Markman [v. Westview
Instruments, Inc.], 52 F.3d [967,] 980 [(Fed. Cir.
1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct.
1384, 134 L. Ed. 2d 577 (1996)] ("The written
description part of the specification itself does
not delimit the right to exclude.  That is the
function and purpose of claims."). . . .  [T]he
Supreme Court made clear that the claims are "of
primary importance, in the effort to ascertain
precisely what it is that is patented."  Merrill
v. Yeomans, 94 U.S. 568, 570, 24 L. Ed. 235
(1876).  Because the patentee is required to
"define precisely what his invention is," the
Court explained, it is "unjust to the public, as
well as an evasion of the law, to construe it in a
manner different from the plain import of its
terms."  White v. Dunbar, 119 U.S. 47, 52, 7 S.
Ct. 72, 30 L. Ed. 303 (1886) . . . .

We have frequently stated that the words of a
claim "are generally given their ordinary and
customary meaning."  Vitronics, 90 F.3d at 1582;
see also Toro Co. v. White Consol. Indus., Inc.,
199 F.3d 1295, 1299 (Fed. Cir. 1999); Renishaw PLC
v. Marposs Societa' per Azioni, 158 F.3d 1243,
1249 (Fed. Cir. 1998).  We have made clear,
moreover, that the ordinary and customary meaning
of a claim term is the meaning that the term would
have to a person of ordinary skill in the art in
question at the time of the invention, i.e., as of
the effective filing date of the patent
application.  See Innova, 381 F.3d at 1116 ("A
court construing a patent claim seeks to accord a
claim the meaning it would have to a person of
ordinary skill in the art at the time of the
invention."); Home Diagnostics, Inc. v. LifeScan,
Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004)

("customary meaning" refers to the "customary meaning in [the] art field"); Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1338 (Fed. Cir. 2003) (claim terms "are examined through the viewing glass of a person skilled in the art"); see also PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1363 (Fed. Cir. 2005) (meaning of claim "must be interpreted as of [the] effective filing date" of the patent application); Schering Corp. v. Amgen Inc., 222 F.3d 1347, 1353 (Fed. Cir. 2000) (same).

415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (some alterations in

Phillips).  The Federal Circuit in Phillips further described the

process for construing claim language:

>    In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. See Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation").  In such circumstances, general purpose dictionaries may be helpful.  In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art.  Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Innova, 381 F.3d at 1116.  Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id.; see also Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1364 (Fed. Cir. 2004); Vitronics, 90 F.3d at

1582–83; <u>Markman</u>, 52 F.3d at 979–80.
<u>Id.</u> at 1314.

## **DISCUSSION**

The Nalu Kai Motion argues, in essence, that the '016 Patent was obvious in light of the Switlik Rescue Sled, [Palmatier Decl., Exh. DP13 (Switlik Rescue Sled Ad),] which was an embodiment of U.S. Patent No. 4,736,474 ("the Moran Patent"), [<u>id.</u>, Exh. DP12 (Moran Patent),] and included all of the features of the '016 Patent with the exception of a fin. [Mem. in Supp. Gof Nalu Kai Motion at 1.[4]] HAB argues, on the other hand, that the '016 Patent included non-obvious improvements over the prior art, most significantly, the integration of a rigid housing with a planar non-stick surface to create a single unified board with all of the features (and more) of the Switlik Rescue Sled. [Mem. in Opp. to Nalu Kai Motion ("HAB's Opposition") at 1-2.] In response, Nalu Kai argues that HAB's construction of the housing is a post hoc attempt to get the '016 Patent out from under the prior art Switlik Rescue Sled, and requires a tortured interpretation of the claimed housing – inconsistent with the '016 Patent claims and specifications, and its prosecution

---

[4] Nalu Kai filed a "corrected" brief in support of its motion on August 17, 2014. [Dkt. no. 43.] All references to the memorandum in support of the Nalu Kai Motion are to that version of the memorandum.

history.[5]  [Reply in Supp. of Nalu Kai Motion ("Nalu Kai's Reply") at 2-9.]

35 U.S.C. § 282(a) provides that a "patent shall be presumed valid. . . .  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  An invalidity defense must be proved by clear and convincing evidence.  <u>i4i</u>, 131 S. Ct. at 2242.  Therefore, this Court may only reverse the PTO's decision to issue the amended '016 claims as non-obvious if Nalu Kai proves by clear and convincing evidence that the '016 Patent was obvious in 1998.

The parties dispute whether an even higher burden applies where the PTO has already considered all of the prior art before the court on appeal.  <u>See, e.g</u>, Mem. in Supp. of HAB Motion at 4-5; Mem. in Opp. to HAB Motion ("Nalu Kai's Opp.") at 10.  The Court finds that this dispute is immaterial to its decision.  Whether or not it is a formally enhanced burden, the United States Supreme Court has explained that, "if the PTO did not have all material facts before it, its considered judgment may lose significant force.  And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear

---

[5] Nalu Kai also argues that other HAB constructions regarding the housing, such as that it is "external" and "extremely" rigid are not supported by the claim language.  The Court need not address these constructions insofar as they are tangential to the central issue regarding the housing – that it is a single, unified structure.

and convincing evidence may be easier to sustain." <u>i4i</u>, 131 S.
Ct. at 2251 (citation omitted). The Court thus takes into
account that the PTO had the Switlik references before it when it
issued the Reexamination Certificate.[6]  In sum, Nalu Kai has not
presented clear and convincing evidence that the claims in the
'016 Patent were obvious in 1998. <u>See</u> <u>id.</u> at 2242.

The original '016 Patent consisted of twenty-seven
claims. As a result of the reexamination, three of those claims
were cancelled, nine were reexamined and determined to be
patentable as amended, and the remainder were not reexamined at
all. [Reexamination Certificate.]  HAB has submitted, [Mem. in
Supp. of HAB Motion at 8 n.4,] and Nalu Kai does not dispute,
that Claim 21 is the broadest independent claim that the PTO
reexamined and, thus, if it was not obvious in light of prior
art, the other narrower independent claims also must not be
obvious.  Reexamined Claim 21 states as follows:[7]

21. A water craft, comprising:

_____

[6] The Court also finds that the myriad additional prior art
that Nalu Kai provides, <u>see</u> Palmatier Decl., Exhs. DP14, DP17-28,
DP34-40, and DP43, while informative, is beside the point.  The
issue boils down to whether the '016 Patent was obvious in light
of the Switlik Rescue Sled.  Further, the Court rejects Nalu
Kai's attempt to introduce undated, and unverified evidence
related to the so-called Eurocraft Rescue Sled.

[7] As the Reexamination Certificate explains:
"Matter enclosed in heavy brackets **[ ]** appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent." [Reexamination Certificate at 2.]

[a)] an inflatable housing including top and
bottom walls having opposing inner surfaces;

[b)] said housing including a front portion, said
top and bottom walls at said front portion
remaining substantially parallel while
extending upwardly with respect to the water
level, *said front portion terminating in a
forward pointed shape;*

*a fin disposed underneath said housing*;

[c)] said top wall including a *non-skid* flat
surface configured to support a user; and

[d)] a plurality of connectors secured to said
inner surfaces, said connectors being
configured to maintain said top and bottom
walls substantially flat *with an
uninterrupted planar surface* when said
housing is inflated, *resulting in a stable,
rigid support platform.*

[Reexamination Certificate (italics in original).]

The Court begins with the construction of the
challenged claim. According to the ordinary and customary
meaning of the words in the claim, see Phillips, 415 F.3d at
1312-13, the Court construes Claim 21 to describe a single,
inflatable unified housing made rigid by drop-stitch
construction, with an upturned nose, fin, and non-stick surface.
That is, the invention claims a single self-contained inflatable
paddleboard.

As HAB argues, this contrasts with the Moran Patent,
which claims two structures put together to give the Switlik
Rescue Sled, for example, similar functionality. Both of the
independent claims in the Moran Patent (Claims 1 and 26) describe

13

two structures: a housing and a cover.  For example, Claim 1

describes:

> 1. A rescue transportation device comprising:
>
> **(a) an inflatable support member** including:
>
>> (1) a main section extending generally
>> horizontally and being selectively inflatable,
>> said main section defining a first support end and
>> a second support end thereon; and
>>
>> (2) an inclined section being inflatable with said
>> main section and being adjacent to said first
>> support end of said main section and extending
>> upwardly and outwardly therefrom;
>
> **(b) a cover** means adapted to extend about said
> inflatable support member, said cover means defining
> first cover end adjacent said first support end and a
> second cover end adjacent said second support end, said
> cover means defining a slot means therein adapted to
> allow removal and replacement thereof in position
> extending about said inflatable support member;
>
> . . . .

[Moran Patent at 723 (emphases added).[8]]  While the Court agrees

with Nalu Kai that the inflatable support member is similar to

the housing in the '016 Patent, including the nose, the Moran

Patent clearly claims two structures (the "support member" and

the "cover"), fitted together via the "slot" in the cover to

allow use of the invention as a rescue device.[9]  Thus, the Court

---

[8] Since some of the exhibits are composites of multiple
documents with differing pagination, the Court cites to the
PageID from the Court's electronic filing system when citing to
the exhibits in the record.

[9] Similarly, the Switlik Rescue Sled requires a soft cover
(continued...)

rejects Nalu Kai's assertion that HAB's construction of the
housing is based solely on extrinsic evidence, such as the
illustrations included in the '016 Patent, since the claims
themselves support the construction.  [Nalu Kai's Opp. at 18-20.]

Although the Court finds that the meanings of the words
in the two claims (Claim 1 from the Moran Patent, and Claim 21
from the '016 Patent) can be understood based on ordinary and
customary usage, the Court also finds that the abstracts and
specifications support the critical distinction between the two.

For instance, the abstract for the Moran Patent
explains:

> A rescue transportation device having **an
> inflatable support member** with a generally
> horizontally extending main section and an
> inclined section adjacent to one end of the main
> section and extending upwardly and outwardly
> therefrom.  **A cover** is adapted to extend about the
> inflatable support member and is capable of
> placement on and off the inflatable support member

---

[9](...continued)
that attaches to, but is not actually, the housing.  See Mem. in
Supp. of HAB Motion at 15-16 (including copy of Switlik Rescue
Sled Ad).  Nalu Kai disputes HAB's construction of the Moran
Patent, but not that the Switlik Rescue Sled includes two
structures.  See Nalu Kai's Opp. at 15-20; see also HAB's
Statement of Undisputed Material Facts ("HAB CSOF"), filed
7/26/14 (dkt. no. 36-2), at ¶ 21 ("Moran and Rescue Sled each
show a watercraft consisting of an outer housing (cover)
encapsulating an internal inflatable support member (inflatable
bladder).");  Nalu Kai's Response to Defendant Hawaii Airboards,
LLC's Concise Statement of Undisputed Facts in Support of Its
Motion for Summary Judgment that U.S. Pat. No. 6,066,016 Is
Valid, filed 9/10/14 (dkt. no. 49), at ¶ 21 (disputing that
"Switlik references teach cover as 'housing'" and citing, *inter
alia*, Nalu Kai CSOF, Decl. of Stanley Switlik, Exhs. S1-S6).

> by way of a slot means defined therein to
> facilitate fitting.  A wide open mesh head
> restraint device is **selectively attachable with
> respect to the cover** . . . .  A lower body
> restraint device is **also attachable with respect
> to the cover** . . . .  Towing securement means may
> be **defined on the cover** . . . .

[Moran Patent at 718 (emphases added).]  Central to the patent is

the idea that the support member provides support for the

flotation device, while the standalone cover provides for all of

the other (attached) features, such as the leash and various

restraints.  Together the two pieces constitute the invention.

In contrast, the abstracts to both the original '016

Patent and the Reexamination Certificate, [Palmatier Decl., Exhs.

DP1 at 620, DP2 at 631,] describe the '016 Patent as a single

unified body that provides for flotation and also use:

> A water craft for survival or recreational
> purposes, comprises an inflatable elongate housing
> that provides a platform and has an internal
> supporting structure for rigidity and a fin or
> multitude of fins for stability and tracking
> purposes as the survivor paddles the water craft
> by arm motion. . . .  A non-skid surface on the
> platform enables the survivor to lay on top of the
> water craft without slipping off. . .  In addition
> to survivor applications, the water craft can be
> used for water recreational purposes such as
> surfing and paddling.

Though also not necessary to the Court's decision, the

distinction between the two patents can be seen clearly by

reviewing the prosecution history and, specifically, the addition

of the language, "an uninterrupted planar surface" to the '016

Patent claims.  Review of the history both shows that: contrary

16

to Nalu Kai's arguments, the PTO understood the unique single housing feature of the '016 Patent; and the language of the patent claims a single structure as opposed to the Moran Patent's dual structures.

In a PTO order dated November 6, 2012, granting the request for ex parte reexamination, examiner Matthew C. Graham considered, *inter alia*, U.S. Patent 2,064,128 ("Smithers Patent") for a pneumatic surfboard or float,[10] [Palmatier Decl., Exh. DP41 (Smithers Patent),] the Moran Patent, and the Switlik Rescue Sled Ad. [Id., Exh. DP7 (compilation of reexamination documents) at 663.] Examiner Graham granted the request to specifically consider whether the '016 Patent was valid in light of Moran Patent and the Switlik Rescue Sled. He explained:

> Key to these claims is the recitation that the top and bottom walls at said front portion remaining substantially parallel while extending upwardly.
>
> Smithers teaches an inflatable elongate housing including parallel top and bottom walls. Further, Smithers teaches that said top wall includes a flat surface configured to support a user lying in a prone face-down position. Smithers is considered to be "old art" and was utilized in a rejection of the claims during the original prosecution. During said prosecution, the recitation of "the top and bottom walls at said front portion remaining substantially parallel while extending upwardly" was added to distinguish over Smithers.

_____

[10] Yonover made amendments to his patent application in 1999 to differentiate it from the Smithers Patent, among others. See Palmatier Decl., Exhs. DP4-DP6.

Moran teaches an inflatable elongate housing which is capable of flotation and which includes a front portion, said top and bottom walls remaining substantially parallel while extending upwardly. The Rescue Magazine Ad shows a rescue sled which floats on water and which has a front portion which has top and bottom walls which remain substantially parallel while extending upwardly with respect to the level of water on which the sled would float.

A reasonable examiner would consider the teachings in Moran and the Rescue Magazine Ad to be important in the determination of the patentability of claims 1, 3, 4, 7, 14, 15, 16, 17, 21, 22 and 25 of Yonover. Accordingly, Moran and the Rescue Magazine Ad raise a substantial new question of patentability of the requested claims of Yonover, which question has not been previously made. . . .

[Id. at 665-66 (citations omitted).]

Then, on November 21, 2012, Examiner Graham rejected – in a Non-Final Rejection – the independent claims in the '016 Patent. [Id. at 652.] He reasoned, in part:

8. Claims 21-22 and 25 are rejected under 35 U.S.C. 103(a) as being unpatentable over Smithers in view of Moran or the Rescue Magazine Ad and Mauney.[11]

. . . .

It would have been obvious to one of ordinary skill in the art to have formed the front portion to extend upwardly in Smithers in view of either Moran or the Rescue Magazine Ad so as to better

---

[11] The Mauney Patent, U.S. Patent 2,743,510, describes an inflatable fabric segment joined together by "a plurality of drop or tie threads." [Palmatier Decl., Exh. DP42 (Mauney Patent) at 848.] It too was considered as prior art and given as a reason for the initial rejection of the '016 Patent in 1999. See id., Exh. DP4.

> deflect the water while the inflatable craft is
> moving forward as is commonplace in watercraft
> and/or to provide better support for a person's
> head.  And it would have been obvious to one of
> ordinary skill in the art to have utilized sewn
> internal connectors, such as shown by Mauney, to
> keep the craft flat and provide stability.

[Id. at 655-56.]

HAB amended its claims, [Palmatier Decl., Exh. DP8 (Amendment A),] but on May 1, 2013, Examiner Graham issued a Final Rejection for similar reasons as the non-final rejection. [Id., Exh. DP9 (Final Rejection).]  However, according to a summary by the PTO, in a July 11, 2013 interview with Examiner Graham and two other PTO personnel,[12] "Examiner [Graham] suggested to [PTO] Rep that the limitation regarding the substantially flat surface being an uninterrupted planar surface be added to the independent claims to overcome the rejections at hand."  [Interview Summary at 492.]  Thus, the PTO recognized that the '016 Patent had many of the same features as the Switlik Rescue Sled, but it was unique in that it consisted of a single

_____

[12] There is some dispute as to whether the '016 Patent and HAB's amendments were reviewed by Examiner Graham alone or by a "panel of three examiners."  HAB points to: the Notice of Intent to Issue Ex Parte Reexamination Certificate as being electronically signed by Graham as the "CRU Examiner" and Conferees "EDL" and "PCE"; and the Ex Parte Reexamination Interview Summary as including as "participants" Graham, Peter English and Brian Green.  [HAB CSOF, Exhs. B (Notice of Intent to Issue) at 488, C (Interview Summary) at 492.]  The Court does not find it material whether there was one or three examiners; the critical issue is the prior art considered and the reasoning in the PTO's determinations.

unified structure, whereas the Moran Patent described two separate structures.

Apparently, based on this interview, HAB offered Amendment B on September 14, 2012, which included the specific language regarding "an uninterrupted plane" as suggested by Examiner Graham. [Palmatier Decl., Exh. DP10 (Amendment B) at 696, 698-99.] HAB argued, "Patent Owner *does* claim a water craft having a unique combination of elements resulting in a stable, rigid inflated structure having flat, substantially parallel top and bottom walls and a defined shape that may be used for surfing and paddling." [Id. at 706 (emphasis in original).] Further, it explained:

> Once exposed to the existence of such drop-stitch material and its capabilities, it occurred to Patent Owner that the potential strength of the material could be configured into stable, rigid inflatable paddleboards or surfboards by constructing a flat, 'tabular' housing with a forward curve and generally pointed end to ensure that it moves through the waves without penetrating or sinking into the waves or water surface. One or more fins act as tracking devices to keep the board from sliding sideways in the wind or wave action, and placing a non-slip surface enables the user to lay down (or stand up) on the structure without slipping off.

[Id.] This is the same argument that HAB makes in its memorandum, which shows that it is not a post hoc argument drummed up for litigation as Nalu Kai suggests. It also shows that the PTO considered it, and granted the Reexamination Certificate on this basis.

On October 9, 2013, the PTO sent out a Notice of Intent

to Issue Ex Parte Reexamination Certificate.  [Palmatier Decl.,

Exh. DP11.]  Examiner Graham explained:

> The following is an examiner's statement of
> reasons for patentability and/or confirmation of
> the claims found patentable in this reexamination
> proceeding: the prior art of record, including
> Smithers, Moran and Rescue Sled, fails to show or
> suggest a plurality of connectors being configured
> to maintain the top and bottom walls substantially
> flat with **and uninterrupted planar surface for a
> water craft** as now recited in the amended
> independent claims 1, 14 and 21.  While Moran and
> Rescue Sled show such flat surfaces, they fail to
> have the plurality of connectors.  The prior art
> that includes connectors on the inner surfaces of
> inflatable water craft, and other inflatable
> transport craft, form corrugated walls, such as
> shown by Smithers.

[Id. at 715 (emphasis added).[13]]  Thus, according to the claims

themselves, the specifications and the prosecution history, the

Court finds that there are significant "differences between

claims and prior art."  See Procter & Gamble, 566 F.3d at 994

(describing Graham factors).

---

[13] Nalu Kai also argues that the Switlik Rescue Sled could
not have been considered by the PTO during the reexamination
because it is not published prior art.  See, e.g., Nalu Kai's
Opp. at 10.  However, from the Notice of Intent to Issue Ex Parte
Reexamination Certificate, [Palmatier Decl., Exh. DP11,] as well
as the others quoted herein, this is clearly not the case.  The
Court also notes that, although it does not reach the issue, from
the present record it appears that, contrary to Nalu Kai's
representations, there was no fraud since the PTO had all of the
pertinent prior art that is discussed in and attached to the
Motions before it, and appreciated the history of the use of
drop-stitch construction.

Further, HAB makes a convincing argument regarding secondary considerations.[14]  See id. (describing one of the Graham factors as "secondary considerations").  It argues that, although many elements of the '016 Patent were available to the public before 1998, as Nalu Kai concedes, [Complaint at ¶¶ 17-18,] it was not until the 2000s (after the issuance of the '016 Patent) that the SUP paddleboard industry rapidly expanded. [HAB's Opp. at 39-40.]  Further, numerous of Nalu Kai's competitors have licensed and continue to license the use of the '016 Patent, which is also a secondary consideration.  [Amendment B at 707.]  Although this issue is not determinative, the Court finds it persuasive as to nonobviousness and, while there may be other explanations for the rise in the industry and competitor behavior, Nalu Kai has not offered any.  See Nalu Kai's Reply at 18 (solely arguing that the secondary considerations are unsupported because they rely on HAB's housing argument, which this Court credits).

Since the Graham factors weigh heavily toward nonobviousness, Nalu Kai has not proven invalidity on the basis

_____

[14] The third Graham factor, the level of ordinary skill in the pertinent art, is largely undisputed and, to the extent that it is, the Court does not find that it weighs in either parties' favor.  In underscoring the Court's decision regarding obviousness, it notes that HAB offered the Affidavit of Dick Brewer, who attested that he had fifty years of experience designing and shaping surfboards and that the '016 Patent was not obvious.  [HAB CSOF, Exh. F (Amendment B), Aff. of Dick Brewer.]

of obviousness, let alone, provided clear and convincing evidence of invalidity.  The Court FINDS that, even viewing the evidence in the light most favorable to Nalu Kai, there is no genuine issue of material fact as to whether the '016 Patent was obvious.[15]  Cf. KSR, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.").  The Court therefore DENIES the Nalu Kai Motion.

To prove anticipation, a party challenging a patent must show that each claim element was disclosed in a single prior art reference.  Therasense, 593 F.3d at 1332.  Since the Court finds that the '016 Patent was not obvious in light of the Moran Patent or the Switlik Rescue Sled, it follows that there is no genuine issue of material fact as to whether either of these prior art references anticipated the '016 Patent.  The Court therefore GRANTS the HAB Motion.  Since the Court FINDS that the Reexamination Certificate is valid, it grants summary judgment on behalf of HAB as to Count I of the Complaint.

---

[15] The Court includes in this finding all of the challenged claims, both independent and dependent.  Since the independent claims are valid, it follows that the dependent ones are valid as well since they simply claim features on top of the independent claims.  The Court also rejects the other arguments by Nalu Kai not discussed in the text of this Order.

## **CONCLUSION**

On the basis of the foregoing, HAB's Motion for Summary Judgment that U.S. Patent No. 6,066,016 Is Valid, filed July 26, 2014, is HEREBY GRANTED; and Nalu Kai's Motion for Partial Summary Judgment of Patent Invalidity, also filed July 26, 2014 is HEREBY DENIED. Claims II, III and IV from the Complaint and Counterclaims I and II from the Counterclaim remain.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 4, 2014.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**NALU KAI INC. VS. HAWAII AIRBOARDS, LLC**; CV 14-00112 LEK-RLP; ORDER GRANTING HAWAII AIRBOARDS, LLC'S MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 6,066,016 IS VALID; AND DENYING NALU KAI INCORPORATED'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT INVALIDITY